UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LAKEISHA HALL                                          CIVIL ACTION

VERSUS

LOUISIANA WORKFORCE                          NO.: 15-00533-BAJ-RLB
COMMISSION, ET AL.

RULING AND ORDER

Before the Court is a **Motion to Dismiss Pursuant to Fed. R. Civ. P. Rule
12(b)(1) and 12(b)(6) (Doc. 8)**, filed by Defendants Louisiana Workforce
Commission, Wes Hataway, Bryce Tomlin, and Nakesla Blount (collectively,
"Defendants"). Defendants seek an order from this Court pursuant to Federal Rules
of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6), dismissing some of Plaintiff
Lakeisha Hall's ("Plaintiff") claims for failure to state a claim upon which relief can
be granted. An opposition was filed by Plaintiff, (Doc. 21), and a reply was filed by
Defendants, (Doc. 24). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Oral
argument is not necessary.

## I.   BACKGROUND

This action arises out of Plaintiff's termination from the Louisiana Workforce
Commission ("LWC") on July 14, 2014. Plaintiff alleges that she was terminated as a
result of her pregnancy and her pregnancy related absences. (Doc. 4 at ¶ 14). She
began her full-time, probationary employment with the LWC in 2012, where she
worked in the Office of Workers' Compensation Administration. (*Id*. at ¶¶ 12-14). At
all relevant times, Plaintiff alleges that Bryce Tomlin ("Tomlin") was her direct

supervisor, Wes Hataway ("Hataway") was the Director of the Workers' Compensation Administration, and Nakesla Blount ("Blount") was the Human Resources Manager. (*Id*. at ¶ 15).

Plaintiff claims that her pregnancy began around June 1, 2014. (*Id*. at ¶ 4). She alleges that she informed Tomlin of her pregnancy around June 23, 2014. (*Id*. at ¶ 26).  Shortly thereafter, Plaintiff alleges that she started suffering from "morning sickness," which resulted in multiple absences and late arrivals to work. (*Id*. at ¶ 30A).   Plaintiff alleges that Tomlin informed her that her absences would be considered unexcused, and failed to advise her that she may be eligible for leave under the Family Medical Leave Act ("FMLA"). (*Id*.).

On July 10, 2014, Plaintiff alleges that Tomlin implemented a Supervisory Plan to help improve her attendance due to her leave balance being low as a result of her pregnancy. (*Id*. at ¶¶ 31, 33). According to Plaintiff, she was instructed that she would not receive approval on annual and compensatory leave requests until she significantly improved her attendance, but she was permitted to use annual leave for medical appointments if it was qualified leave under the FMLA. (*Id*. at ¶¶ 31, 32).

The next day, Friday July 11, 2014, Plaintiff alleges that she used previously approved leave to attend her first prenatal appointment. (*Id*. at ¶ 35). When she returned to work on Monday July 14, 2014, Plaintiff alleges that Tomlin gave her a Notice of Separation. (*Id*. at ¶ 36). Plaintiff alleges that she subsequently met with Hataway and Blount about her termination. (*Id*. at ¶ 39). During the meeting, Plaintiff alleges that Hataway seemed surprised to learn about the termination, but conveyed that Tomlin informed him that she "would not be a good fit" based on the

Supervisory Plan meeting. (*Id.* at ¶ 38). Plaintiff alleges that Blount falsely represented that management was considering the Supervisory Plan before Plaintiff disclosed her pregnancy. (*Id.* at ¶ 39).

Plaintiff filed the instant action on August 12, 2015, pursuant to the following federal statutes: Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1983 ("§ 1983"); Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; and the FMLA, 29 U.S.C. §2601 *et seq.* Plaintiff also alleges the following state law claims: Louisiana Employment Discrimination Law ("LEDL"), La. R.S. § 23:301 *et seq.*; La. R.S. § 23:967; and La. R.S. § 23:314. Pursuant to Rules 12(b)(6) and 12(b)(1), Defendants now seek to dismiss some of Plaintiff's claims on the grounds of Eleventh Amendment Immunity and failure to state a claim for relief. (Doc. 8).

## II.    LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

Under Rule 12(b)(1), a claim is "'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A court should consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002)). Considering a Rule 12(b)(1) motion to dismiss first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* at 286–87 (citing *Ramming*, 281 F.3d at 161). Additionally, a motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir. 1992).

## III.   DISCUSSION

### A.   RULE 12(B)(1): SUBJECT MATTER JURISDICTION

#### 1.   Eleventh Amendment Immunity: The LWC

Defendants contend that this Court lacks subject matter jurisdiction over the LWC because, as an executive department of the State of Louisiana, it is entitled to Eleventh Amendment immunity against Plaintiff's claims under the ADA, FMLA, and state law. (Doc. 8-1 at p. 5).

The Eleventh Amendment of the U.S. Constitution bars suits against the States in federal court. U.S. Cont. amend. XI; *see Papasan v. Allain*, 478 U.S. 265, 276 (1986). This jurisdictional bar applies regardless of the nature of the relief sought. *Lewis v. University of Texas Medical Branch at Galveston*, 665 F.3d 625, 630 (5th Cir.

2011) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).
As a state agency, the LWC is also entitled to Eleventh Amendment immunity as an
alter ego or arm of the State of Louisiana. *Sandres v. Louisiana Workforce Comm'n*,
No. CIV.A.09-652-C, 2010 WL 565378, at *3 (M.D. La. Feb. 17, 2010) (finding that
the LWC was entitled to Eleventh Amendment Immunity); *see also Perez v. Region
20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).

   A State's immunity from suit is not absolute. The Supreme Court has
recognized certain circumstances in which an individual may sue a State in federal
court. *Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir.
2011). One such circumstance includes a State waiving its Eleventh Amendment
immunity by voluntarily invoking federal court jurisdiction, or by making a "clear
declaration" that it intends to submit itself to federal court jurisdiction. *Coll. Sav.
Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).
Another circumstance is Congress' abrogation of Eleventh Amendment immunity by
making "its intention to abrogate unmistakably clear in the language of the statute
and act[ing] pursuant to a valid exercise of its power under § 5 of the Fourteenth
Amendment." *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003).

   The parties do not dispute that Louisiana has not waived its immunity to suit
in federal court. La. Rev. Stat. Ann. § 13:5106(A). Additionally, Plaintiff concedes that
Louisiana has not waived immunity to the ADA and state law claims, and she
voluntarily dismisses those claims against Defendants.[1] (Doc. 21-3 at pp. 3, 7).

───────────────────

[1] Plaintiff's opposition unartfully states, "absent a waiver by Defendants, this Court does not have
jurisdiction over her ADA claim . . . . Plaintiff is willing to voluntarily dismiss these claims against the

Therefore, the only remaining claim to be considered, for the purpose of this Court's jurisdiction, is Plaintiff's FMLA claim.

The Supreme Court established that Congress abrogated Eleventh Amendment immunity for the family-care provision of the FMLA, but not for the self-care provision. *See Coleman v. Court of Appeals of Maryland*, __ U.S. __, 132 S. Ct. 1327 (2012) (holding that Eleventh Amendment immunity is not abrogated under the self-care provision); *Hibbs*, 538 U.S. 721 (holding that the Eleventh Amendment is abrogated under the family-care provision). The parties disagree as to whether pregnancy-related illness is classified under the family-care provision or the self-care provision.

In *Coleman*, the Supreme Court addressed, *inter alia*, the issue of pregnancy-related illness. The Court noted, while recognizing the legislative purpose, that the self-care provision offered women the benefit of allowing them to take leave for pregnancy-related illnesses. *Coleman*, 132 S. Ct. at 1335. Conversely, in *Hibbs*, the Court discussed the fact that the family-care provision was enacted predominately for the purpose of offering gender-neutral leave for child-birth and child-care, in addition to other family caregiving needs. *Hibbs*, 538 U.S. at 731–35.

Since Plaintiff's claim is due to pregnancy-related illness, her claim falls under the self-care provision as identified by the Supreme Court in *Coleman*. As Congress

---

State." Doc. 21-3 at p. 7. The Court construes this as a dismissal of her ADA claims against Defendants, including Tomlin in his individual and official capacities. Furthermore, irrespective of Plaintiff's voluntary dismissal, the ADA claim against Tomlin in his individual capacity would not have been a cognizable claim. *See Robertson v. Neuromedical Ctr.*, 983 F. Supp. 669, 670 n. 1 (M.D. La. 1997) (reasoning that "there is no individual liability under Title VII or the ADEA, so likewise there should be no individual liability under the ADA").

did not abrogate Eleventh Amendment immunity under the self-care provision, Plaintiff's claim against the LWC under the FMLA are barred, and this Court is without jurisdiction.

2.      Eleventh Amendment Immunity: Tomlin and Hataway

Plaintiff asserts FMLA claims against Tomlin and Hataway in their individual capacities. Individual capacity claims against state officials are not subject to Eleventh Amendment immunity[2] unless the State is the real and substantial party in interest. *Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006). Determining whether the State is the real and substantial party in interest is a fact intensive inquiry. *Id.* at 183. Indemnification, alone, is not enough. *Henley v. Simpson*, 527 F. App'x 303, 305 (5th Cir. 2013). Courts must consider whether a State's treasury would be ultimately liable for the monetary damages or whether the suit is brought for the purpose of compelling the State to act. *Id.* at 306–07.

Under the facts of this case, and at this stage in the proceedings, this Court concludes that the State is not the real party in interest. *See Modica*, 465 F.3d at 183–84 (comparing an FMLA claim against a state official to cases under the Fair Labor Standards Act ("FLSA") and concluding that the State was not the real party in interest). Plaintiff does not allege the existence of an improper or illegal LWC policy, but alleges impermissible conduct by LWC employees. *Cf. Henley*, 527 F. App'x

---

[2] In Plaintiff's opposition, she argues that the claims against Defendants in their individual capacities are subject to Eleventh Amendment immunity because they fall under *Ex Parte Young*, 209 U.S. 123 (1908). Doc. 21-3 at p. 9. Plaintiff's understanding of *Ex Parte Young* is mistaken. The *Ex Parte Young* doctrine applies to claims against state officials in their *official* capacity, not individual capacity. *See Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 321 (5th Cir. 2008) ("Pursuant to the *Ex Parte Young* exception, the Eleventh Amendment is not a bar to suits for prospective relief against a state employee acting in his official capacity.").

at 306 (finding the Eleventh Amendment applicable in FLSA case against officials in their individual capacity where officers challenged a State's compensation policy and not the wrongful enforcment of that policy); *see also Luder v. Endicott*, 253 F.3d 1020, 1024–25 (7th Cir. 2001) (explaining that the State was the real party in interest because the state officials would not have the financial ability to personally pay the wages owed by the State to 145 plaintiffs). And the fact that the State may indemnify Tomlin and Hataway for potential damages does not render it the real party in interest. *Henley*, 527 F. App'x at 305. Thus, at this early stage of the proceedings, the Court finds that the Eleventh Amendment does not bar Plaintiff's claims against Tomlin and Hataway in their individual capacities.

### B.    RULE 12(B)(6): FAILURE TO STATE A CLAIM

#### 1.    42 U.S.C. § 1983

##### a.    FMLA

Plaintiff alleges a § 1983 claim against Hataway, Tomlin and Blount, in their individual capacities, for violating the Fourteenth Amendment by denying her protected leave under the FMLA. (Doc. 4 at p. 24). Section 1983 imposes liability on every person acting under color of state law that deprives another of rights or privileges secured by the Constitution or laws of the United States. For a § 1983 remedy to exist, there must be a violation of a federal right and Congress must not have specifically foreclosed a remedy under § 1983 by providing a comprehensive enforcement mechanism for the protection of that right. *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997).

Under the FMLA, "[t]he comprehensive detailed enforcement provisions . . . show an intention of Congress that the specific remedies set forth in § 2617 be the exclusive remedies available for a violation of the FMLA." *Sturza v. Loadmaster Eng'g, Inc.*, No. CIV. A. H-07-2500, 2008 WL 1967102, at *2 (S.D. Tex. May 1, 2008) (quoting *O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F.Supp.2d 868, 894 (S.D. Ohio 1998)); *see also Hayduk v. City of Johnstown*, 580 F. Supp. 2d 429, 487 (W.D. Pa. 2008); *Lucht v. Encompass Corp.*, 491 F. Supp. 2d 856, 866–67 (S.D. Iowa 2007); *Cisneros v. Colorado*, No. CIV.A.03CV02122WDMCB, 2005 WL 1719755, at *8 (D. Colo. July 22, 2005). As a result, Plaintiff cannot allege a FMLA violation pursuant to § 1983, and Plaintiff's FLMA claim pursuant to § 1983 is dismissed for failure to state a claim upon which relief can be granted.

### b.     Employment Discrimination

Plaintiff also alleges a § 1983 claim against Hataway, Tomlin and Blount, in their individual capacities, for violating the Fourteenth Amendment by engaging in intentional employment discrimination. Intentional employment discrimination claims under § 1983 mirror that of a parallel action under Title VII. *Lauderdale v. TX. Dept. of Crim. Justice*, 512 F.3d 157, 166 (5th Cir. 2007). Here, Plaintiff alleges intentional employment discrimination based on pregnancy, which is akin to sex discrimination under Title VII. *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 859 (5th Cir. 2002) (acknowledging that the Pregnancy Discrimination Act amended Title VII by explicitly including pregnancy discrimination within the definition of sex discrimination).

9

Since Plaintiff is suing Hataway, Tomlin and Blount, in their individual capacities, she "must allege specific conduct giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). This heighten pleading standard requires Plaintiff to allege that Defendants were either personally involved or that their wrongful actions were causally connected to the constitutional violation. *See James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008).

Here, Plaintiff failed to allege sufficient facts to implicate the personal involvement of Hataway and Blount in the alleged pregnancy discrimination. At most, Plaintiff alleges that Blount and Hataway, the Human Resources manager and the Director of the Workers' Compensation Administration, ratified Tomlin's conduct by not overriding the termination decision and failing to conduct an investigation. (Doc. 4 at ¶ 39B). As supervisory officials, Blount and Hataway "may be held liable if there exists either (1) [their] personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between [their] wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citing *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir.), *cert. denied*, 471 U.S. 1126 (1985). Section 1983 requires "more than a simple ratification of an impermissible act when the ratification is based on independent legitimate reasons." *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir.1982). Because Plaintiff merely alleges ratification, and nothing more, Plaintiff has failed to state a supervisory liability claim against Blount and Hataway.

Plaintiff does, however, allege sufficient facts against Tomlin. Plaintiff alleges that after she disclosed her pregnancy to Tomlin, he began devising a scheme to

terminate her employment based on her pregnancy. (Doc. 4 at ¶ 36A). The alleged scheme included Tomlin telling Plaintiff that her pregnancy-related absences were unexcused, placing her on the Supervisory Plan, and terminating her after she used previously approved leave. (*Id.* at ¶¶ 30-35). Based on the foregoing, the Court finds that Plaintiff has alleged sufficient facts to state a claim against Tomlin for intentional employment discrimination.

c.    *Qualified Immunity*

Defendants raise the defense of qualified immunity. (Doc. 8-1 at p. 13). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)).  A public official is entitled to qualified immunity unless the plaintiff alleges that (1) the defendant violated the plaintiff's constitutional rights; and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (citing *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007)).

As previously noted, pregnancy discrimination in the workplace is akin to sex discrimination. *Stout*, 282 F.3d at 859. It has long been clearly established that "[s]ex discrimination . . . in public employment violate[s] the Equal Protection Clause of the Fourteenth Amendment." *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997). Furthermore, intentional sex discrimination is never objectively reasonable, and at the motion to dismiss stage, a qualified immunity defense should

11

generally be foreclosed as long as the plaintiff alleges sufficient facts to state a claim. *Ezell v. Wells*, No. 2:15-CV-00083-J, 2015 WL 4191751, at \*12 (N.D. Tex. July 10, 2015); *Stark v. Univ. of S. Miss.*, 8 F. Supp. 3d 825, 838 (S.D. Miss. 2014). Because the Court has found that Plaintiff has stated a plausible claim, Tomlin is not entitled to qualified immunity.[3] *See*, *e.g.*, *Been v. New Mexico Dep't of Info. Tech.*, 815 F. Supp. 2d 1222, 1243 (D.N.M. 2011) (denying qualified immunity for pregnancy discrimination claim); *Williams v. Bd. of Educ. of Chicago*, No. 07 C 6997, 2009 WL 140124, at \*5 (N.D. Ill. Jan. 21, 2009) (same).

2.     Title VII

Defendants challenge Plaintiff's Title VII disparate impact claim on the grounds that Plaintiff failed to exhaust her administrative remedies. (Doc. 8-1 at p. 17). It is well established that the "scope" of a complaint is limited to the "scope" of the EEOC investigation which can "reasonably be expected to grow out of the charge of discrimination." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).

In *Pacheco*, the Fifth Circuit examined what facts in an EEOC charge might be reasonably expected to trigger an EEOC disparate impact investigation. 448 F.3d at 790. The Fifth Circuit noted that a review of the prima facie case for disparate impact was relevant in making the determination. *Id.* at 791. To establish a prima facie case for disparate impact a plaintiff must show "(1) a facially neutral policy; (2)

---

[3] Plaintiff's only remaining § 1983 is against Tomlin for intentional employment discrimination, so the Court only considered the qualified immunity defense as to him.

that, in fact, has a disproportionately adverse effect on a protected class." *Id.* (citing *Hebert v. Monsanto*, 682 F.2d 1111, 1116 (5th Cir. 1982)).

A review of Plaintiff's EEOC charge failed to reveal that a disparate impact claim was asserted. Plaintiff's EEOC charge alleged that she notified Tomlin of her pregnancy, and seventeen-days later, he placed her on the Supervisory Plan to improve her attendance. (Doc. 4-1 at p. 3). These allegations do not implicate a disparate impact claim. Additionally, Plaintiff only had 180 days from the last alleged act of discrimination to file an EEOC charge for disparate impact. *Deleon v. Gen. Insulation, Inc.*, 575 F. App'x 292, 293 (5th Cir. 2014). Plaintiff was terminated on July 14, 2014, but she does not allege that a separate EEOC charge was filed within the applicable time limit. Therefore, the Court concludes that Plaintiff failed to exhaust administrative remedies for her disparate impact claim.

3.    Punitive Damages

Plaintiff requests "[p]unitive [d]amages where applicable." (Doc. 4 at ¶ 90(F)). Defendants contend, and Plaintiff agrees, that pursuant to 42 U.S.C. § 1981a(b)(1), punitive damages are not permitted against the LWC[4] for intentional employment discrimination. (Doc. 8-1 at p. 13). As § 1981a(b)(1) explicitly instructs that punitive damages may not be recovered against a government agency, any potential claim for punitive damages against the LWC is dismissed.

---

[4] Defendants also argue that punitive damages are not permitted against the state officials in their official capacities. Since Plaintiff only sought an official capacity claim under the ADA against Tomlin, and that claim has subsequently been dismissed, the matter of punitive damages need not be considered.

IV.   **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendants' **Motion to Dismiss Pursuant to Fed. R. Civ. P. Rule 12(b)(1) and 12(b)(6) (Doc. 8)** is **GRANTED IN PART and DENIED IN PART.** It is **GRANTED** as to Plaintiff's FMLA claim, Title VII disparate impact claim, and request for punitive damages against the Louisiana Workforce Commission; Plaintiff's § 1983 claim for violation of the FMLA against Wes Hataway, Bryce Tomlin, and Nakesla Blount; and Plaintiff's § 1983 claim for intentional employment discrimination against Wes Hataway and Nakesla Blount. It is **DENIED** as to Plaintiff's § 1983 claim for intentional employment discrimination against Bryce Tomlin.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Louisiana Workforce Commission, pursuant to the ADA, FMLA, Title VII disparate impact, La. R.S. § 23:301 *et seq.*, La. R.S. § 23:967, and La. R.S. § 23:314, as well as punitive damages, are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Bryce Tomlin, in his individual and official capacity, pursuant to the ADA, and in his individual capacity, pursuant to § 1983 for violation of the FMLA, are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Wes Hataway, in his individual capacity, pursuant to § 1983 for violation of the FMLA and intentional employment discrimination, are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant, Nakesla Blount, is **DISMISSED** from this action.

Baton Rouge, Louisiana, this **29th** day of April, 2016.

_____

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

15